UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

     v.

GERMAN CAMPOS JR.

Case No. 24 CR 439

Judge Thomas M. Durkin

### GOVERNMENT SENTENCING MEMORANDUM

The UNITED STATES OF AMERICA, by and through its attorney, ANDREW S. BOUTROS, the United States Attorney for the Northern District of Illinois, respectfully submits the government's sentencing memorandum in this matter. Over the course of approximately ten months, defendant GERMAN CAMPOS JR. committed a string of violent bank robberies. During all but one of those bank robberies, defendant brandished a firearm at the tellers, a firearm that was later recovered from defendant's apartment. For the reasons set forth below, the government requests that this Court sentence defendant to the statutory mandatory minimum sentence of seven years' imprisonment, to run consecutively with a Guidelines sentence of imprisonment of 97 to 121 months. Such a sentence is sufficient, but not greater than necessary, to comply with the relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

1

## I.      FACTUAL BACKGROUND[1]

### a.      October 18, 2023 Robbery of $6,991 from the Schaumburg U.S. Bank (Count One)

On October 18, 2023, at approximately 10:47 a.m., defendant entered a U.S. Bank located in Schaumburg, Illinois wearing, among other things, a black mask and a dark zip-up jacket. Defendant approached a teller, pulled out a black handgun, pointed the handgun at the teller, and demanded money. Below is an excerpt of the bank's surveillance footage capturing defendant with the firearm.



---

[1] These facts are derived from the Presentence Investigation Report ("PSR") and the Government's Version of the Offense.

Defendant told the teller to let him behind the teller counter, which she did, and he handed her a bag. Below are excerpts of the bank surveillance footage showing the teller placing money into defendant's bag, and defendant standing next to her.



The teller emptied her teller drawer into the bag and gave it to defendant. Afterwards, defendant left the bank. Defendant took approximately $6,991 from the teller and left the bank. At the time of the robbery, the Schamburg U.S. Bank's deposits were insured by the FDIC.

### b. December 16, 2023 Robbery of $5,532 from Elmhurst U.S. Bank (Stipulated Offense One)

On December 16, 2023, at approximately 11:49 a.m., defendant entered a U.S. Bank located in Elmhurst, Illinois wearing, among other things, a gray hooded sweatshirt with the hood up, a baseball cap, and a black mask. Defendant approached a teller and handed over a note that demanded money and threatened to shoot the teller if he/she did not comply. Defendant took approximately $5,532 from the teller

and left the bank. Below is a still image from the bank surveillance footage showing defendant retrieving his demand note.



At the time of the robbery, the Elmhurst U.S. Bank's deposits were insured by the FDIC.

### c. March 6, 2024 Robbery of $14,662 from Schaumburg U.S. Bank (Count Four)

On March 6, 2024, at approximately 1:23 p.m., defendant entered a U.S. Bank located in Schaumburg, Illinois wearing, among other things, a brown hooded sweatshirt with the hood up and a black mask, and carrying a backpack. As defendant approached the teller counter, he pulled a black handgun from his waistband, pointed it at the bank employees, and demanded money. The bank employees complied with defendant's demand, taking the money out of the teller drawers and placing it in defendant's bag. Below is a still image from the bank surveillance footage showing defendant pointing his gun at the bank employees.



Defendant took approximately $14,662 from one of the tellers and left the bank. At the time of the robbery, the Schamburg U.S. Bank's deposits were insured by the FDIC.

### d. June 13, 2024 Robbery of $4,925 from Elmhurst U.S. Bank (Stipulated Offense Two)

On June 13, 2024, at approximately 3:20 p.m., defendant entered a U.S. Bank located in Elmhurst, Illinois wearing, among other things, a black hooded sweatshirt with the hood up, a baseball cap, blue jeans, a mask, sunglasses, and black sneakers with white soles, and carrying an Under Armour backpack in his left hand and a black handgun in his right hand. Defendant approached a bank teller counter, placed the Under Armour backpack on the counter, and demanded money. Defendant took approximately $4,925 from the teller and left the bank. Below are still images from the bank surveillance footage showing defendant entering the bank and demanding money from the teller.

 

At the time of the robbery, the Elmhurst U.S. Bank's deposits were insured by the FDIC.

### e. August 9, 2024 Robbery of $3,858 from Park Ridge BMO Bank (Stipulated Offense Three)

On August 9, 2024, at approximately 11:40 a.m., defendant entered a BMO Bank located in Park Ridge, Illinois wearing, among other things, a dark gray long sleeve zip-up hooded sweatshirt with the hood up, a dark gaiter style mask, and gloves, and carrying an Under Armour backpack. Defendant approached a bank teller counter, pulled a black handgun out of his backpack, and held the handgun on the counter, on its side, facing the teller. Defendant also placed his Under Armour backpack on the counter. Defendant demanded money and took approximately $3,858 from the teller and left the bank. Below is a still image from the bank surveillance footage showing defendant brandishing his gun.

6



At the time of the robbery, the Park Ridge BMO Bank's deposits were insured by the FDIC.

### f. August 28, 2024 Robbery of $16,320 from Niles U.S. Bank (Counts Ten and Eleven)

On August 28, 2024, at approximately 9:10 a.m., defendant entered a U.S. Bank located in Niles, Illinois wearing, among other things, a dark gray long sleeve zip-up hooded sweatshirt with the hood up, blue jeans, a baseball cap, and a black mask, and carrying an Under Armour backpack and a black handgun. Upon entering the bank, defendant immediately pointed his gun at two bank employees and ordered them into the vault of the bank. Once at the vault, defendant encountered a third bank employee and a customer. While holding everyone at gunpoint, defendant demanded money. One of the bank employees told the defendant that the money was in the teller drawers and so defendant directed everyone to leave the vault area and go to the teller area. While continuing to hold everyone at gunpoint, defendant handed his backpack to one of the bank employees. One employee held the bag open while two others emptied their teller drawers into the backpack. Defendant took

approximately $16,320 from the bank. Defendant then directed the bank employees and customer back to the safety deposit vault area and tried to close everyone inside using the exterior, metal vault door. At the same time, one of the bank employees closed the interior, clear door of the vault. Afterwards, defendant left the bank. Below are still images from the bank surveillance footage showing defendant pointing his gun at the individuals at the bank.

 

At the time of the robbery, the Niles U.S. Bank's deposits were insured by the FDIC.

## II.  PROCEDURAL HISTORY

On October 16, 2024, the grand jury returned an indictment charging defendant with six counts of bank robbery, in violation of Title 18, United States Code, Section 2113(a) (Counts One, Three, Four, Six, Eight, Ten) and five counts of brandishing a firearm during and in relation to a bank robbery, in violation of Title 18, United States Code, Section 924(c)(1)(A) (Counts Two, Five, Seven, Nine, Eleven). On March 5, 2026, defendant plead guilty to counts One, Four, Ten, and Eleven of

the indictment, and stipulated to three additional bank robbery offenses. Dkts. 37, 38. Defendant is scheduled to be sentenced by the Honorable Thomas M. Durkin on July 29, 2026. Dkt. 42.

## III.    GUIDELINES CALCULATION

### a.    Criminal History Category

The government agrees with the PSR that defendant's criminal history points equal zero and defendant's criminal history category is I. PSR ¶ 95.

### b.    Offense Level

The government agrees with the PSR that defendant's offense level, after accounting for timely acceptance of responsibility, equals 30. PSR ¶ 89.

Specifically, the government agrees with the PSR's calculations of the offense level as follows:

### I.    Count 1 (October 18, 2023) (Group I – 1 Unit)

| | |
|---|---|
| Bank Robbery (§2B3.1) | 20 |
| Money Taken From Bank (§2B3.1(b)(1)) | +2 |
| A Firearm Was Otherwise Used (§2B3.1(b)(2)(B)) | +6 |
| Adjusted Offense Level | 28 |

### II.    Count 4 (March 6, 2024) (Group II – 1 Unit)

| | |
|---|---|
| Bank Robbery (§2B3.1) | 20 |
| Money Taken From Bank (§2B3.1(b)(1)) | +2 |
| A Firearm Was Otherwise Used (§2B3.1(b)(2)(B)) | +6 |
| Adjusted Offense Level | 28 |

### III.    Count 10 (August 28, 2024) (Group III – .5 Unit)

| | |
|---|---|
| Bank Robbery (§2B3.1) | 20 |
| Money Taken From Bank (§2B3.1(b)(1)) | +2 |
| Adjusted Offense Level | 22 |

### IV.    Stipulated Offense One (December 16, 2023) (Group IV – 1 Unit)

| | |
|---|---|
| Bank Robbery (§2B3.1) | 20 |
| Money Taken From Bank (§2B3.1(b)(1)) | +2 |

9

| Threat of Death Made (§2B3.1(b)(2)(F)) | +2 |
|---|---|
| Adjusted Offense Level | 24 |

### V.    Stipulated Offense Two (June 13, 2024) (Group V – 1 Unit)

| Bank Robbery (§2B3.1) | 20 |
|---|---|
| Money Taken From Bank (§2B3.1(b)(1)) | +2 |
| A Firearm Was Brandished or Possessed (§2B3.1(b)(2)(C)) | +5 |
| Adjusted Offense Level | 27 |

### VI.    Stipulated Offense Three (August 9, 2024) (Group VI – 1 Unit)

| Bank Robbery (§2B3.1) | 20 |
|---|---|
| Money Taken From Bank (§2B3.1(b)(1)) | +2 |
| A Firearm Was Otherwise Used (§2B3.1(b)(2)(B)) | +6 |
| Adjusted Offense Level | 28 |

PSR ¶¶ 38-83. The greatest adjusted offense level is therefore 28. *Id.* ¶ 84. Because there are more than five units, the offense level is increased by five levels, to 33. *Id.* ¶ 85. With a three-level reduction for acceptance of responsibility, defendant's total offense level is 30. *Id.* ¶¶ 88, 89. When combined with defendant's criminal history category of I, the resulting Guidelines sentencing range is 97 to 121 months' imprisonment. *Id.* ¶ 150.

In addition to the advisory Guidelines range for Counts One, Four, and Ten, and the three stipulated offenses, Count Eleven carries a statutory mandatory minimum sentence of seven years' imprisonment. *Id.* ¶ 149.

## IV.    The Section 3553(A) Factors Warrant a Sentence Within the Guidelines Range

### a.    Nature and Circumstances of the Offense and Seriousness of the Offense

The defendant's serial bank robberies warrant a lengthy sentence of incarceration. Between October of 2023 and August of 2024, defendant robbed banks

10

on six different occasions. During the commission of all but one of those robberies, defendant used a firearm—brandishing his gun or pointing it directly at employees and a customer. On September 17, 2024, defendant was arrested and his apartment was searched. During the search of the apartment, law enforcement located a beretta M9 Model 9mm handgun—the gun used during the robberies. Defendant's repeated use of a gun during robberies, including pointing that gun into victim faces over and over again, posed a significant threat to the safety of the bank employees, customers, and general public.

Defendant's actions were violent—the purpose was to cause his victims to fear for their lives so they would hand over the money, and defendant undoubtedly did cause fear. Moreover, the only reason why defendant stopped his violent robbery spree was because he was finally caught after ten months of terrorizing bank employees and customers.

### b.    Defendant's History and Characteristics

Defendant does not have any criminal history, which is reflected in his criminal history score of I. It is, however, disconcerting that an individual with no criminal history, a stable family, an education, and, apparently, no pressing need for money would resort, in the first instance, to such a violent crime spree. Moreover, the government is concerned that defendant has repeatedly attempted to diminish his culpability for his crimes, first claiming in an post-arrest interview that the gun he used was a fake (even though a real gun, and only a real gun, was found in his home) and then also claiming that he needed the money to pay for his daughter's therapy

11

services when his bank records reveal he was using the money for food purchases, shopping expenses, and a trip to Las Vegas.

### c. To Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant

Defendant has never served any time in prison, and therefore a sentence of incarceration may serve to deter defendant from any future criminal conduct. The government agrees, however, with probation that defendant's immediate entry into serious and violent crime raises alarm bells regarding defendant's propensity towards violent crimes, and indicates a within guidelines sentence is necessary to ensure specific deterrence. As to general deterrence, defendant's armed robberies terrorized the bank employees and customers who were victimized by his crime. Defendant's sentence should reflect the need to generally deter other individuals from similarly seeking to engage in such violent crimes for money.

## V. RESTITUTION

As reflected in the Plea Agreement, the total loss incurred by the victim banks in this case is approximately $52,288. The government respectfully requests that the Court order restitution to the victim banks, in the individual amounts reflected in the restitution spreadsheet submitted to the Court.

## VI. SUPERVISED RELEASE CONDITIONS AND TERM

The government has no objection and agrees with Probation's recommendations for the conditions of supervised release to be imposed as the facts underlying the offense and defendant's history and characteristics detailed in the PSR support the imposition of those conditions. The government recommends that

following a period of incarceration, defendant be sentenced to two years supervised release. The government respectfully requests that defendant be required to comply with mandatory conditions set forth in 18 U.S.C. § 3583(d) and § 5D1.3(a). The government agrees with the PSR recommended discretionary conditions, which serve to facilitate supervision by the probation officer, support defendant's rehabilitation and reintegration into society, and serve to promote deterrence and protect the public. Finally, the government respectfully requests that defendant be required to comply with the recommended PSR special conditions, which further support defendant's reintegration into society.

## VII. CONCLUSION

For the foregoing reasons, the government respectfully recommends that the Court impose a sentence consistent with the advisory Guidelines range and statutory mandatory minimum sentence requirements, which is sufficient, but not greater than necessary, to meet the purposes set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: /s/ Stephanie Stern
STEPHANIE STERN
Assistant United States Attorney
219 S. Dearborn Street, Rm. 500
Chicago, Illinois 60604
(312) 469-6132

DATE: July 21, 2026

13